UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-60785-CIV-DIMITROULEAS

CHRIS LINSELL, MOOREA REMSEN, JACOB ABITTAN, THERESA STOKER, MELISSA PEREZ, MICHAEL PRUS, MUKHARAM ADENOVA, NICOLE DE LA CRUZ THOMPSON, DANNY GENTRY II, DAVID BURNBAUER, STEPHANIE BOOKER, JOSHUA BAASE, CHRISTINA MAILHOIT and TIFFANY JOHNSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KAPLAN NORTH AMERICA, LLC.,

Defendant.
_________________________________/

**ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

THIS CAUSE is before the Court on Kaplan North America, LLC. ("Defendant" or "Kaplan")'s Motion to Dismiss Plaintiff's Amended Complaint (the "Motion"), filed July 10, 2026 [DE 24]. The Court has carefully considered the Motion [DE 24], Plaintiffs' Response [DE 28], Defendant's Reply [DE 33], and is otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiffs commenced this action on March 18, 2026, against Defendant Kaplan North America, LLC ("Kaplan"). *See* [DE 1]. Plaintiffs filed their Amended Complaint ("the Complaint"), the operative pleading, on May 26, 2026. *See* [DE 21]. In the Complaint, Plaintiffs assert various claims arising out of a data breach affecting Defendant, where between October

30, 2025 and November 18, 2025, an authorized actor accessed Defendant's computer services and "took certain files." *See* [DE 21] ¶ 33. As a result, Plaintiffs allege Defendant's negligence, breach of implied contract, invasion of privacy, unjust enrichment, and violation of the California Consumer Privacy Act. *See generally id.*

According to the Complaint, Plaintiffs sought test preparation, professional licensing, and/or educational services from Defendant. *See* [DE 21] ¶¶ 25–27. As a condition of obtaining Defendant's services, Plaintiffs provided "highly sensitive Private Information" to Defendant. *Id.* ¶¶ 26, 28. In or around March 2026, Defendant concluded an investigation of a data breach of its system. *See id.* ¶¶ 3, 32. Defendant's investigation determined that an unauthorized actor accessed its computer servers sometime between October 30, 2025, and November 18, 2025, and "took certain files." *Id.* ¶ 33. Upon confirming the breach, on March 17, 2026, Defendant sent a notice letter to impacted individuals to notify them of the breach. *Id.* On February 21, 2026, Defendant had determined that Plaintiffs' names, Social Security numbers, and/or Driver's License numbers were compromised in the Data Breach. *Id.* ¶¶ 5, 34.

Based on the foregoing, Plaintiffs bring this class action "on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to" protect said information, warn impacted individuals of Defendant's inadequate security practices, and employ reasonable and effective security procedures. *Id.* ¶ 9. Plaintiffs allege that Defendant was negligent in its conduct and, as a result, Plaintiffs have suffered theft of their Personally Identifiable Information ("PII"),[1] lost or diminished value of their PII, continued risk to their PII

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person, including any – (i) Name, Social Security number, date of birth, official State or government issued driver's license or identification number …" 17 C.F.R. § 248.201 (2013).

which remains unencrypted and is subject to further unauthorized disclosures while in Defendant's possession without proper cybersecurity safeguards in effect. *Id.* ¶ 10. Plaintiffs also allege that they have had to undertake mitigation efforts to remedy the Data Breach consequences. *Id.*

In Count I of the Complaint, Plaintiffs allege that Kaplan negligently caused the harm to Plaintiffs and their compromised PII. [DE 21] ¶¶ 225–55. Plaintiffs allege that Kaplan knowingly maintained Plaintiffs' PII and had a duty to exercise reasonable care in protecting such information from being compromised, but failed to do so. [DE 21] ¶ 226. As a result, Defendant's breach of its duties was the actual and proximate cause of Plaintiffs' injuries. *Id.* ¶¶ 249–51.

In Count II of the Complaint, Plaintiffs allege Kaplan breached an implied contract that existed between the parties by "failing to safeguard and protect their Private Information" and by "failing to provide timely and accurate notice to them that their Private Information was compromised as a result of the Data Breach." *Id.* ¶ 262. Plaintiffs maintain an implied contract existed because there was a mutual understanding that Kaplan would safeguard the PII it collected as a requirement for providing its services to Plaintiffs and class members. *See id.* ¶¶ 257–58.

In Count III of the Complaint, Plaintiffs allege that they have a legally protected privacy interest in their PII, and that Kaplan intentionally intruded into Plaintiffs' and Class Members' seclusion by disclosing their PII to third parties. *See id.* ¶¶ 266, 268. Thus, Defendant's conduct amounts to intrusion upon seclusion. *Id.* ¶¶ 269–75.

In Count IV of the Complaint, Plaintiffs plead, in the alternative to their breach of implied contract claim (Count II), that Kaplan unjustly enriched itself through its conduct by avoiding its data security obligations and instead using cheaper, ineffective security measures. *Id.* ¶¶ 280. Plaintiffs maintain that Defendant retained a monetary benefit through inequitable means by failing to disclose their inadequate security practices. *Id.* ¶ 282. Plaintiffs claim they have no adequate remedy at law and demand that Defendant disgorges into a common fund or constructive trust proceeds they unjustly received from Plaintiffs and Class Members. *Id.* ¶ 287.

In the final count (Count V), Plaintiff Chappell and the Class Members of the California subclass allege Kaplan violated the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150 *et seq*. Plaintiff Chappell further pleads that Defendant violated its statutory duty to "implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information" of Plaintiff Chappell and the California subclass *Id. See also* [DE 21] ¶ 295.

Plaintiffs seek actual damages, compensatory damages, statutory damages and statutory penalties, punitive damages, equitable relief requiring restitution and disgorgement of revenues wrongfully retained, injunctive relief enjoining Defendant's conduct, and attorney's fees and costs. *See* [DE 21].

## II. LEGAL STANDARD

### A. Pleading Requirements under the Federal Rules

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give [] fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under

Rule 12(b)(6), a motion to dismiss should be granted if the plaintiff cannot articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (internal quotations omitted). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp*., 693 F.3d 1333, 1337 (11th Cir. 2012).

## III. DISCUSSION

Defendant argues that the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Plaintiffs lack standing. Defendant claims that Plaintiffs' alleged injuries not concrete because Plaintiffs do not adequately allege an imminent risk of future harm, and that the "injuries" are not fairly traceable to Defendant's conduct. *See* [DE 24] at 5–12. Alternatively, Defendant contends that the Court should dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) on the following grounds: (1) Plaintiffs fail to plead causation on their negligence claim;

(2) Plaintiffs fail to plead that an implied contract existed because they offer no evidence demonstrating Kaplan agreed to provide data security services; (3) Plaintiffs fail to plausibly plead an intentional intrusion into a "protected" place under Florida law for the tort of intrusion upon seclusion; (4) Plaintiffs fail to plead an unjust enrichment claim because they do not allege Kaplan unjustly retained any benefit; and (5) Plaintiff Chappell's CCPA claim fails because of a procedural defect and for lack of actual damages. *See generally id*. The Court will address each of Defendant's arguments in turn.

**A. Plaintiffs' Article III Standing**

The traditional understanding of Article III's "case or controversy" requires a plaintiff to have standing to sue. "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. United States v. Orlando Reg'l*, 524 F.3d 1229, 1232 (11th Cir. 2008) (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n. 42 (11th Cir. 1991)). "Federal Courts cannot exercise jurisdiction over cases where the parties lack standing." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011). If a plaintiff does not have standing, "the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Id.* "The party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "When addressing a motion to dismiss for lack of standing, the court evaluates standing based on the facts of the complaint. However, the court 'may not speculate concerning the existence of standing or piece together support for the plaintiff.'" *Correa v. BAC Home Loans Servicing LP*, 853 F. Supp. 2d 1203, 1207 (M.D. Fla. 2012) (quoting *Lujan*, 504 U.S. at 560–61).

In the class action context, Article III standing requires that a class representative satisfy the individual standing prerequisites for each claim they assert and must also be part of the putative class, possess the same interests, and suffer the same injuries. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). If the case has at least one individual plaintiff who has demonstrated standing for each of the claims alleged, the Court need not determine that the other named plaintiffs have standing to sue. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124–25 (11th Cir. 2019).

To establish Article III standing, a plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is unlikely to be redressed by a favorable judicial decision. *See Lujan*, 504 U.S. at 560–61. Of the three standing prerequisites, Defendant challenges injury-in-fact and traceability. The Court separately addresses each element.

*i. Concrete injury*

To establish an injury-in-fact, a plaintiff must show that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical[.]" *Lujan*, 504 U.S. at 560. For an injury to be particularized, it "must affect the plaintiff in a personal and individual way." *Id.* The Eleventh Circuit recognizes three kinds of harm: (1) tangible harms; (2) intangible harms, or injuries "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts"; and (3) a "material risk of future harm" when a plaintiff is seeking injunctive relief. *See Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021)). For alleged future harms, the threat is sufficiently concrete if there is a "substantial risk" of such harm or the harm is "certainly impending." *Clapper v. Amnesty Int'l*

*USA*, 568 U.S. 398, 416 (2013). A plaintiff cannot conjure standing by mitigating a perceived risk that is not substantial or certainly impending. *See Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1339 (11th Cir. 2021). The threat of future identity theft has been considered "certainly impending" or a "substantial risk" in cases where plaintiffs have alleged "actual misuse or actual access to personal data." *Id.* at 1340; *see also TransUnion*, 141 S. Ct. at 2211 (deeming "material risk of future harm" not sufficiently concrete in a suit for damages and requiring a separate concrete harm). Such actual misuse constitutes both a "present" injury and a "substantial risk" of future harm. *See Green-Cooper*, 73 F.4th at 889 (*quoting Tsao*, 986 F.3d at 1343). However, "evidence of actual misuse is not necessary for a plaintiff to establish standing following a data breach"; named plaintiffs must at least identify "specific evidence of some misuse of class members' data" to plead a substantial risk of future harm. *Tsao*, 986 F.3d at 1343–44. "[V]ague, conclusory allegations that members of the class have suffered" misuse do not suffice. *Id.*

Defendant contends that Plaintiffs do not plead actual misuse of their information; instead, they raise non-misuse injury allegations, which Defendant claims are not sufficiently concrete to state a case or controversy.[2] *See* [DE 24] at 2, 10. Despite Defendant's characterization, this Court finds that Plaintiffs did allege actual misuse; thus, the proper inquiry is whether the actual misuse suffered supports a finding of substantial risk that Plaintiffs will suffer future identity theft.

[2] The "non-misuse" allegations include time spent monitoring accounts and credit, changing passwords, verifying the notice letter, lost time researching the Data Breach, other mitigation efforts, anxiety, emotional distress, loss of control, alleged diminution of value of the stolen PII, and a present or continuing risk of future fraud, identity theft, or misuse. *See* [DE 21] ¶¶ 72–73, 89–90, 106–07, 123–24, 140–41, 156–57, 172–73, 189, 205–06, 211.

Plaintiffs allege a variety of actual misuses of their PII. For instance, named Plaintiff Shabdue asserts "unauthorized log in attempts on her email account; receiving notifications about unauthorized individuals attempting to open bank accounts in her name; receiving notifications about unauthorized actors using a trading account in her name" and an increase in spam calls and emails attempting to solicit more information from her. [DE 21] ¶ 78. Named Plaintiff Cramer also claims to have experienced fraudulent charges on her debit cards, credit cards, and PayPal account, "fraudulent information appearing on her credit reports; and receiv[ing] notifications that her information was published to the Dark Web." *Id.* ¶ 95. Other named Plaintiffs (Johnson, Mailhoit, Bowden, Burnbauer, Britton, Baxley) allege similar actual misuses. Plaintiff Burnbauer's claim is perhaps the most detailed, alleging that he was subject to "a $3,300 fraudulent school loan payment in his name." *Id.* ¶ 161. However, Plaintiff Chappell does not assert any actual misuse; she focuses on her injury "arising from the present and continuing risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals." *Id.* ¶ 210. The Court addresses Plaintiff Chappell's standing separately in Section III.A(iii) *infra.*

The pleaded actual misuses constitute present injuries and create a substantial risk of future injury. *See, e.g.*, *Green-Cooper*, 73 F.4th at 890 (finding that plaintiffs' allegations that their credit card information was "exposed for theft and sale on the dark web" were sufficient to establish both a present injury and a substantial risk of future misuse of personal information associated with the hacked credit card). For instance, Plaintiff Burnbauer's fraudulent loan payment allegation demonstrates a present financial injury and substantial risk that his information will be used to make other fraudulent charges. *Cf. Tsao*, 986 F.3d at 1343–44 (finding that plaintiffs who had their credit card data stolen but only asserted a vague

"unauthorized charges" misuse failed to allege any specific misuse of class members' data, and thus did not plead a substantial risk of future harm).

Because only one named plaintiff needs to have standing at this stage of the litigation (as all named plaintiffs except for Plaintiff Chappell allege the same causes of action), the Court need not address whether each alleged injury is concrete for the Article III standing inquiry.

Defendant contends Plaintiffs' "actual misuse" allegations are not in fact actual, relying on the reasoning in *DiPierro* to demonstrate that Plaintiffs lack standing. In *DiPierro*, Tampa General, a non-profit hospital, experienced a breach of its computer systems, during which an unauthorized third party obtained access to certain files, including "some patient information" such as Social Security numbers, addresses, names, and dates of birth from 2.1 million individuals. *See DiPierro v. Fla. Health Sci. Ctr., Inc.*, 737 F. Supp. 3d 1314, 1317–18 (M.D. Fla. June 18, 2024). A few months after beginning its investigation, Tampa General issued notices informing potentially affected individuals that their data may have been compromised. *Id.* at 1318. Named plaintiffs for a nationwide class sued, alleging common-law tort and contract claims and violations of the Florida Deceptive and Unfair Trade Practices Act. *Id.* at 1317. The *DiPierro* court found that plaintiffs lacked standing because they could not demonstrate that they suffered an injury-in-fact. *Id.* The court deemed plaintiffs' allegations as vague and conclusory, not rising to the "specific evidence of some misuse" standard from *Tsao*. *Id.* at 1324. The *DiPierro* court based its conclusion on the fact that the named plaintiffs failed to allege that their information was in fact listed on a particular website and that Tampa General's issued notice issued was ambivalent as to whether the plaintiffs' information was indeed stolen. *Id.*

Here, Plaintiffs argue that Defendant is conflating the standing inquiry with the merits inquiry. In *Conner v. Cpap Med Supplies & Servs., Inc.*, the court distinguished *DiPierro* and

found that a plaintiff had standing by alleging that she suffered actual misuse as a result of a data breach "evidenced by multiple notifications [she] has received since early 2025 informing her that her Private Information was found published on the dark web." 2016 WL 1506098, at *4 (M.D. Fla. Mar. 29, 2026). While the court acknowledged that the plaintiff failed "to specifically identify the data published or the 'specific dark web marketplace' on which it was found," the court found the misuse sufficiently concrete to confer standing at the motion to dismiss stage of proceedings. *See id.*

This Court agrees with Plaintiffs that the factual allegations pled in the Complaint suffice to confer standing at this stage of the proceedings. While several of the named Plaintiffs in this action indeed offer vague allegations of identity theft or misuse of their PII, an "individualized analysis of standing and harm is more appropriate at the class certification stage." *Conner*, 2016 WL 1506098, at *4 (*quoting Cravens v. Garda CL Se., Inc.* No. 24-CV-80400, 2024 WL 5058304, at *5 n.3 (S.D. Fla. Dec. 9, 2024)).

As for the non-misuse injuries, including emotional distress, mitigation efforts, time spent monitoring accounts and credit, changing passwords, verifying the notice letter, and lost time researching the Data Breach, the Court finds these should be considered concrete injuries because they are supported by a substantial risk of future harm. *Cf. Manning v. Zumpano Patricios, P.A.*, 2025 WL 3062563, at *6 (S.D. Fla. Nov. 3, 2025) (declining to confer standing where such injuries were standalone, without a separate finding of substantial risk of future injury). Thus, Plaintiffs have plausibly alleged they suffered an injury-in-fact.

*ii. Traceability*

Plaintiffs must next show that their injury-in-fact is fairly traceable to Kaplan. Defendant posits that Plaintiffs have failed to sufficiently allege a nexus between the misuse of their

Personally Identifying Information ("PII") and the Data Breach because they fail to allege when the purported misuse occurred, which categories of data caused the alleged misuse, and fail to rule out other sources that could have caused the misuse. Defendant contends that Plaintiffs' reliance on measures they took to protect their private information is "an attempt to support a negative inference." [DE 24] at 9 (quoting *DiPierro*, 737 F. Supp. 3d at 1330).

A plaintiff must allege an injury "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020) (quoting *Lujan*, 504 U.S. at 560). There must be a "'causal connection' between the plaintiff's injuries and the defendant's legal violation." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023). However, a defendant does not have to be a proximate cause of a plaintiff's injuries; traceability is a lower threshold, and even indirect harms suffice. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice to establish standing." *Resnick*, 693 F.3d at 1323 (quotation omitted).

Here, Plaintiffs allege that Defendant failed to safeguard their PII. *See* [DE 21] ¶ 47. After Plaintiffs' PII was within Defendant's possession and control, the Data Breach occurred, where unauthorized third parties took certain files containing Plaintiffs' PII. *See id.* ¶ 33. Within seven months of the Data Breach, Plaintiffs experienced documented incidents of identity theft, economic losses, lost time, and emotional distress and anxiety. *Id.* ¶ 10. They are now facing a substantial risk of future identity theft. These allegations are sufficient to demonstrate Plaintiffs' injuries are fairly traceable to Defendant's failure to safeguard their information.

Defendant argues that Plaintiffs do not plausibly show how access to their names, Social Security numbers, and/or Driver's License numbers can be traced to fraudulent charges, PayPal activity, attempted loans, log-in attempts, spam, and "dark web" alerts. *See* [DE 24] at 7. Defendant points out that because only some of the named Plaintiffs allege that their information is on the dark web, the dark web notifications cannot be fairly traced to the Data Breach. *Id.* at 8.

The Court disagrees with Defendant's characterization. As Plaintiffs note, obtaining an individual's name, Social Security number, and other PII could enable the party to access the same individual's credit card accounts, tax returns, and credit records. *See Cravens v. Garda CL Se., Inc.*, 2024 WL 5058304, at *6 (S.D. Fla. Dec. 9, 2024) (finding plaintiffs' allegation that compromised social security numbers, dates of birth, and driver's license numbers are often used by cybercriminals to gain access to other accounts, even if the latter information was not compromised, to sufficiently establish traceability at the pleading stage); *see also In re Mednax Servs., Inc., Cust. Data Sec. Breach*, 603 F. Supp. 3d 1183, 1206 (S.D Fla. May 10, 2022) ("Even if the data accessed in the Data Breaches did not provide all the information necessary to inflict these harms, they very well could have been enough to aid therein.").

Finally, Defendant contends Plaintiffs' injury is not fairly traceable to the Data Breach because Plaintiffs highlight several other "2024 data security incidents that affected a large segment of the population." [DE 24] at 10.

The Court agrees with Plaintiffs that this claim is an inappropriate factual challenge to traceability. "When an attack on jurisdiction implicates the merits of [p]laintiffs' cause of action, the Court should find that jurisdiction exists, and deal with the objection as a direct attack on the merits of the case under Rule 12(b)(6) and Rule 56." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). Defendant's argument is at least an indirect attack on the merits of

Plaintiffs' case, rising to the level of proving proximate causation, and thus should be resolved at the summary judgment stage, when the Court can consider the entire factual record developed during discovery. *See, e.g.*, *Flexiteek Ams., Inc. v. PlasTEAK, Inc.*, No. 08-60996, 2009 WL 890613, at *1 (S.D. Fla. Apr. 1, 2009). Plaintiffs have met their burden at this stage to plead their injuries are fairly traceable to Kaplan's failure to safeguard their information.

*iii. Standing Analysis for Plaintiff Chappell's claims*

Because Plaintiff Chappell seeks to allege a separate claim under the California Consumer Privacy Act ("CCPA") on behalf of the California subclass, Plaintiff Chappell must sufficiently allege that she independently has Article III standing. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019) ("Where [multiple] plaintiffs seek to proceed as a class, only one named plaintiff for each proposed class needs to have standing *for a particular claim* to advance" past the motion to dismiss stage.") (emphasis added).

Defendant underscores that Plaintiff Chappell "does not allege any misuse of her data at all." In addition to allegations of loss of time, anxiety, emotional distress, and mitigation efforts injuries, Plaintiff Chappell alleges that she suffered "actual injury in the form of damages to and diminution in the value of her Private Information." [DE 1] ¶ 207. The Court will evaluate whether diminution of value of PII constitutes actual misuse or at least "specific evidence of some misuse of class members' data" to plead a substantial risk of future harm. *Tsao*, 986 F.3d at 1344.

The Eleventh Circuit has not decided whether the loss of property value in one's PII constitutes a cognizable injury in data breach cases. Another district judge in the Southern District of Florida has previously held that Plaintiffs' alleged diminution in value of their PII is sufficiently concrete to confer standing because compromise of such information affects

Plaintiffs' ability to purchase goods and services remotely. *See In re Mednax*, 603 F. Supp. 3d at 1204 (joining "more recent decisions holding that, in the data breach context, plaintiffs need not reduce their PHI or PII to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder"). The *In re Mednax* court reasoned that detrimental impacts to plaintiffs' credit scores due to the substantial risk of future identity theft confer an "actual" (rather than hypothetical) diminution in value. *Id.* More recently, another district judge in the Southern District of Florida made the opposite determination, deeming the plaintiff's "conclusory allegation that he was injured by the diminution in value of his Private Information simply because the information was stolen" not to establish a concrete injury. *Manning v. Zumpano Patricios, P.A.*, 2025 WL 3062563, at *7 (S.D. Fla. Nov. 3, 2025).

Defendant cites *DiPierro* to argue diminution of PII is not a concrete injury. The *DiPierro* court held that diminution of PII is not an injury-in-fact because the plaintiffs did not allege having any intention of selling their personal information to data brokers, legitimate or otherwise. 737 F. Supp. 3d at 1325. In *Manning,* the court adopted the reasoning in *DiPierro*, requiring the plaintiff to have an intention to sell his PII to data brokers. *Manning*, 2025 WL 3062563, at *7.

This Court is persuaded by the argument that a plaintiff's PII can be devalued once stolen due to the impacts to a plaintiff's credit score and reduced access to credit. *See, e.g. In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 460–62 (D. Md. Feb. 21, 2020) ("Neither should the Court ignore what common sense compels it to acknowledge – the value that personal identifying information has in our increasingly digital economy."). The Court disagrees with Defendant's characterization that Plaintiffs need to manifest an intention to sell their information to show their PII has decreased in value.

However, the Court does not find such injury sufficiently concrete here, without more. In *In re Mednax*, the court concluded plaintiffs' diminished PII value was a concrete injury *when paired with other evidence of misuse of plaintiffs' data***,** namely increased spam and the opening of fraudulent bank accounts, that independently demonstrated substantial risk of future harm. *In re Mednax*, 603 F. Supp. 3d at 1203. Plaintiffs rely on *in re Marriott*, but there, the court found loss of PII value concrete where the plaintiffs alleged defendant Marriott "recognize[d] the value of this information and collect[ed] it to better target customers and increase its profits." *In re Marriott*, 440 F. Supp. 3d at 461; *see also In re Yahoo! Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *14 (holding that the plaintiffs had standing where they alleged that "their PII is a valuable commodity, that a market exists for Plaintiffs' PII, that Plaintiffs' PII is being sold by hackers on the dark web, and that Plaintiffs have lost the value of their PII as a result."). Other cases Plaintiffs cite note that respective allegations of diminished value of PII simultaneously allege the publication of the plaintiffs' PII on the dark web. *See, e.g.*, *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1191 (D. Nev. Nov. 2, 2022).

Here, like the plaintiff in *Manning* and in *DiPierro*, Plaintiff Chappell offers no other allegations of actual misuse of her data or "specific evidence of at least some misuse." Plaintiff Chappell's allegation regarding diminished value is bare bones and conclusory: all she pleads is that she "suffered actual injury in the form of damages to and diminution in the value of her Private Information – a form of intangible property that she entrusted to Defendant for the purpose of obtaining services from Defendant, which was compromised in and as a result of the Data Breach." [DE 21] ¶ 207. The court "may not speculate concerning the existence of standing or piece together support for the plaintiff." *Lujan*, 504 U.S. at 560–61. Otherwise, Plaintiff Chappell only asserts non-misuse injuries (mitigating harm by monitoring her accounts and

credit, enrolling in credit monitoring, lost time, annoyance, interference, emotional distress, and anxiety) which, as discussed *supra*, must be coupled with a substantial risk of future injury to be considered concrete injuries of their own accord.

For the foregoing reasons, this Court finds Plaintiff Chappell lacks standing, and this Court lacks jurisdiction to hear the CPPA claim (Count V).

As for Counts I through IV, the Court finds that at least one named Plaintiff has standing and will proceed to evaluate whether Plaintiffs plausibly state a claim for each challenged count.

**B. Rule 12(b)(6) Challenge**

*i. On Causation, generally*

Causation is an element common to four out of the five claims Plaintiffs initially pled.[3] To plausibly plead that a data breach caused identity theft, the pleadings must include "allegations of a nexus between the two instances *beyond allegations of time and sequence*." *Resnick*, 693 F.3d at 1326; *see also Stollenwerk v. Tri-W. Health Care All.*, 254 F. App'x 664, 667 (9th Cir. 2007) (holding that "*purely* temporal connections are often insufficient to establish causation … [H]owever, proximate cause is supported not only by the temporal but also by the *logical*[] relationship between the two events.").

In *Resnick*, the Eleventh Circuit found that Plaintiffs' factual allegations that (1) their sensitive information was stored on Defendant's unencrypted laptop which was subsequently stolen; (2) their identities were stolen; and (3) their stolen identities were used to open unauthorized accounts, to plausibly allege that such damages were caused by Defendant's data breach. *See Resnick*, 693 F.3d at 1327. The Eleventh Circuit found such allegations, in

[3] Including Plaintiffs' withdrawn intrusion-upon-seclusion claim.

conjunction with Plaintiffs' stipulations that they take care to safeguard their sensitive information, to create a logical relationship between the event of the breach and the identity theft. The court also found the temporal element satisfied, given that the identity theft occurred within ten to fourteen months of the said breach. *See id.*

Here, the named Plaintiffs all allege that their PII was misused because of a data breach caused by Defendant's negligent conduct. Plaintiffs note that they took care to safeguard their PII and have "never knowingly transmitted unencrypted Private Information over the internet or other unsecured sources." *See* [DE 21] ¶¶ 70–71, 87–88, 121–22, 138–39, 154–55, 170–71, 187–88, 203–04. Moreover, like the plaintiffs in *Resnick*, Plaintiffs allege that an unauthorized third party stole their PII that was within Defendant's possession and that their stolen identities were used to open unauthorized accounts and make unauthorized charges on existing accounts. *Id.* ¶¶ 78, 95, 112, 129, 145, 161, 178. Some Plaintiffs allege that, following the breach, they received notifications that their PII was published on the dark web. *Id.* ¶¶ 95, 129, 145, 194. Plaintiffs also allege that the harms occurred sometime between the data breach, which occurred between October 30, 2025, and November 18, 2025, and when they filed their complaint on May 26, 2026. *Id.* ¶¶ 34, 75–78. This seven-month time frame is appreciably shorter than the fourteen-month temporal sequence the *Resnick* court recognized. A reasonable jury could find that these facts establish causation.

The Court, following *Resnick*, finds Plaintiffs' stipulations regarding their undertaken PII safeguarding measures and factual allegations sufficient to demonstrate a logical nexus between the Data Breach and the identity theft at this preliminary stage. Plaintiffs also plausibly allege temporality. Thus, the Court finds Plaintiffs have plausibly pled the causation element for each relevant claim discussed *infra*.

*ii. Whether Plaintiffs plausibly allege a negligence claim*

Defendant argues that Plaintiffs fail to demonstrate that the Data Breach caused their alleged damages. [DE 24] at 13. Defendant frames Plaintiffs' allegations as conclusory because they do not allege when the misuse occurred, whether they were subject to other breaches, and whether the particular data implicated in the breach could have caused the misuse. *Id.* at 14.

Under Florida law, "[a] negligence claim requires a plaintiff to show that (1) defendants owe plaintiffs a duty, (2) defendants breached the duty, (3) defendants' breach injured plaintiffs, and '(4) [plaintiffs'] damage [was] caused by the injury to the plaintiff as a result of the defendant's breach of duty.'" *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1089 (Fla. Dist. Ct. App. 2011)). A plaintiff must "include allegations of a nexus between the two instances beyond allegations of time and sequence." *Resnick*, 693 F.3d 1317, 1326 (11th Cir. 2012).

Entities collecting sensitive, private data from consumers and storing such data on their networks have a duty to protect that information. *See In re Mednax*, 603 F. Supp. 3d at 1222; *see also Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989) ("[w]here a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon [the] defendant either to lessen the risk or [to] see that sufficient precautions are taken to protect others from the harm that the risk poses.").

Plaintiffs sufficiently allege that Defendant breached its duty by "failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members Private Information." [DE 21] ¶ 238. *See Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1186 (M.D. Fla. Jan. 25, 2022) (finding plaintiff's allegations that defendants failed to implement industry

protocols and exercising reasonable care in safeguarding plaintiff's PII sufficient to plead that defendants breached their duty).

As discussed in Section III.B(i) *supra*, Plaintiffs have plausibly demonstrated that Defendant's conduct caused their injuries. Finally, the Court finds that a reasonable jury could conclude that the injuries discussed in the standing context, particularly the unauthorized charges and dark web publications, translate to actual harm in the negligence context. *See Am. Optical Corp. v. Spiewak*, 73 So. 3d 120, 127 (Fla. 2011) (explaining that under Florida law, the claimant must demonstrate "some actual harm").

Defendant contests Plaintiffs' negligence *per se* claim, arguing that Section 5 of the FTC Act does not supply a private right of action and thus cannot serve as a basis for a negligence *per se* claim. *See* [DE 24] at 14. In response to Defendant's Motion, Plaintiffs withdrew their negligence *per se* claim. *See* [DE 28] at 16, n.4. Arguments that have not been responded to are deemed conceded. *See, e.g*, *Bargoot v. Sch. Bd. of Palm Beach Cnty.,* No. 21-80849-CIV, 2022 WL 293313, at *7 (S.D. Fla. Feb. 1, 2022) ("[B]y virtue of failing to respond or address the argument, Plaintiff has conceded the argument."); *GolTV, Inc. v. Fox Sports Latin Am. Ltd.,* 277 F. Supp. 3d 1301, 1311 (S.D. Fla. 2017) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned."). Thus, Defendant's Motion to Dismiss as to Plaintiffs' negligence claim (Count I) is **GRANTED in part** (as to negligence *per se*) and **DENIED in part** (as to negligence under Florida law).

*iii. Whether Plaintiffs plausibly allege a breach of implied contract claim*

Defendant posits that Plaintiffs do not plausibly demonstrate Kaplan agreed to provide data security services as part of their agreement. *See* [DE 24] at 15. Defendant argues that, because

Plaintiffs do not identify any express contractual term or representation demonstrating Kaplan's agreement to provide data security services, no such implied agreement exists. *See id.*

Under Florida law, a breach of an implied contract claim has the same elements as a breach of express contract claim, "requiring the plaintiff to allege: (1) existence of a contract; (2) a material breach of the contract by the defendant; and (3) damages resulting from the defendant's breach of the contract." *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1332 (11th Cir. 2017); *see also Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. Dist. Ct. App. 2013) (stating the elements for breach of express contract). Whether a contract is implied in fact is "inferred from the facts and circumstances of the case." *Eskra v. Provident Life & Accident Ins. Co.*, 125 F.3d 1406, 1413 (11th Cir. 1997); *Bromer v. Fla. Power & Light Co.*, 45 So. 2d 658, 660 (Fla. 1949) (When evaluating whether an implied contract exists, a court should give "the effect which the parties, as fair and reasonable men, presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly in reference thereto."). A contract (express or implied) requires a meeting of the minds on the essential terms. *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1221 (11th Cir. 2023). As courts have held, an implied contract to safeguard PII could reasonably be found to exist in transactions where consumers are invited to provide such PII in exchange for a good or service. *See, e.g.*, *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *5 (M.D. Fla. Jan. 27, 2020).

Here, Plaintiffs allege that they were not only invited but *required* to provide their PII and payment as a condition of receiving services, and Defendant in turn collected and stored that data. [DE 21] ¶¶ 28–31, 257. By sharing their PII, Plaintiffs believe that they entered an agreement with Kaplan for Kaplan to utilize the PII solely to provide test preparation and education services, thereby creating the obligation that Kaplan safeguard and protect the data.

[DE 21] ¶ 257. A fact finder could reasonably construe this conduct to create an implied contract. *See, e.g.*, *In re Brinker*, 2020 WL 691848, at *5 (finding an implied contract to safeguard plaintiffs' data to exist where Defendant Chili's invited plaintiffs to pay with payment cards); *see also Castillo v. Seagate Tech, LLC*, No. 16-CV-01958 (RS), 2016 WL 9280242, at *9 (N.D. Cal. Sep. 14, 2016) ("[I]t is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently.").

Defendant contends that Plaintiffs' allegations are bare and conclusory because they "do not identify any contract term, representation, payment, or course of conduct showing that Kaplan agreed to provide separate data-security services." [DE 24] at 15. This argument is unpersuasive. As discussed in the foregoing paragraph, no express terms are required to demonstrate an implied contract existed. Defendant cites *Brush*, but *Brush* focuses on the privacy requirements already imposed by federal law and fails to distinguish *Resnick* (which denied the defendants' motion to dismiss plaintiffs' breach of implied contract claim) or discuss why *Resnick* is not controlling.[4] The Court is satisfied that Plaintiffs plausibly allege the existence of an implied contract with Defendant.

[4] The Court acknowledges a split in authority on this question between *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359 (S.D. Fla. Feb. 17, 2017) and *Farmer v. Humana, Inc.,* No. 21-1478, 582 F. Supp. 3d 1176 (M.D. Fla. Jan. 25, 2022), another data breach case. The *Farmer* court held that, because the plaintiff had to share with the defendant, a healthcare provider, a variety of PII – including name, Social Security number, and date of birth – the plaintiff presumably expected to receive an implicit assurance that the information would be protected. *Farmer*, 582 F. Supp. 3d at 1187–88. The *Farmer* court reasoned that a jury could reasonably conclude an implicit agreement to safeguard the PII existed to effectuate the contract and thus found that the plaintiff plausibly pled the existence of such implied contract. This Court finds the *Farmer* court's reasoning persuasive. Here, Defendant is a merchant, and Plaintiffs are customers contracting to receive education-related services. As Plaintiffs allege, they presumably expected for Defendant to assure safekeeping of their information as a corollary of being required to provide it to Defendant before receiving services.

For reasons explained in Sections III.B(i) and III.B(ii) *supra*, Plaintiffs have also sufficiently pled causation and damages. *See Resnick*, 693 F.3d at 1324–28 (analyzing causation and damages elements of negligence and breach of contract claims together). Plaintiffs have thus stated a plausible claim for breach of implied contract. Accordingly, Defendant's Motion is **DENIED** as to Count II.

*iv. Whether Plaintiffs plausibly allege an intrusion-upon-seclusion claim*

Defendant argues that Plaintiffs do not allege an intentional intrusion by Kaplan, nor do they plausibly state that the intrusion occurred in a protected "place" under Florida law. *See* [DE 24] at 16. Defendant maintains its disclosure of Plaintiffs' PII was unintentional because it did not disclose Plaintiffs' data to a third party; instead, the third party stole Plaintiffs' data without Defendant's authorization. *Id.*

In response to Defendant's Motion, Plaintiffs withdrew their intrusion-upon-seclusion claim. [DE 28] at 19, n.5. Arguments that have not been responded to are deemed conceded. *See, e.g*, *Bargoot,* 2022 WL 293313, at *7 ("[B]y virtue of failing to respond or address the argument, Plaintiff has conceded the argument."); *GolTV, Inc.,* 277 F. Supp. 3d at 1311 ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned."). Thus, Defendant's Motion to Dismiss as to Plaintiffs' intrusion upon seclusion claim (Count III) is **GRANTED**.

*v. Whether Plaintiffs plausibly allege an unjust enrichment claim (Count IV)*

In the alternative to their breach of implied contract claim, Plaintiffs plead Defendant was unjustly enriched from receiving monetary payment without providing reasonably expected data security. [DE 1] ¶¶ 277–87. Defendant contends, however, that Plaintiffs did not plausibly plead

unjust enrichment because Defendant did not unjustly retain any benefit. [DE 24] at 17. Plaintiffs neither show that Kaplan benefitted from receiving their PII nor that Plaintiffs paid additional remuneration for data security services. *See id.* at 18.

To state an unjust enrichment claim in Florida, a plaintiff must show "1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Resnick*, 693 F.3d at 1328 (*quoting Della Ratta v. Della Ratta*, 927 So.2d 1055, 1059 (Fla. Dist. Ct. App. 2006). "In Florida, a claim for unjust enrichment is an equitable claim based on a legal fiction which implies a contract as a matter of law even though the parties to such an implied contract never indicated by deed or word that an agreement existed between them." *14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.*, 43 So. 3d 877, 880 (Fla. Dist. Ct. App. 2010). Unjust enrichment does not involve a causation element, so the Court's causation discussion in Section III.B.(i) *supra* does not apply here.

In *Resnick*, the Court found the plaintiffs sufficiently alleged enough facts to survive Defendant's Motion to Dismiss on their unjust enrichment claim. There, the plaintiffs said they paid monthly premiums to the defendant and the defendant in turn used the premiums to pay for the administrative costs of data management and security. *See Resnick*, 693 F.3d at 1328. The plaintiffs argued that the defendant should not be permitted to retain the money belonging to the plaintiffs because the defendant failed to implement the data management and security measures mandated by industry standards. *See id.*

Here, Plaintiffs allege they provided a monetary benefit by paying for Defendant's services, and they believed that the benefit would be applied to data security efforts to safeguard Plaintiffs' PII. *See* [DE 21] ¶ 278–81. Plaintiffs here, like the *Resnick* plaintiffs, allege that Defendant should not be permitted to retain the money belonging to the Plaintiffs because Defendant failed to implement appropriate data management and security measures as mandated by industry standards. *Id*.

Because Plaintiffs must have paid only what Defendant's services were worth, and nothing more, the Court concludes that Plaintiffs conferred no additional benefit on Defendant. In *Cravens*, the court similarly held that the plaintiffs failed to plausibly allege that Defendant employer subject to the data breach received a benefit from plaintiffs' PII without paying for it. *Cravens v. Garda CL Se., Inc.*, 2024 WL 5058304, at *10 (S.D. Fla. Dec. 9, 2024). The *Cravens* court dismissed the plaintiffs' reliance on *Resnick*, stating that those facts are "easily distinguishable" because in *Resnick*, plaintiffs alleged they paid Defendant for data security services. *Id.* The *Resnick* plaintiffs specifically alleged that the defendant "appreciates or has knowledge of the benefit," required to adequately plead unjust enrichment. Here, Plaintiffs merely mention that they "understood that part of the benefit … would be applied to data security efforts." [DE 21] ¶ 278. Defendant contends that such a "one-sided understanding does not support unjust enrichment." The Court agrees.

Plaintiffs cite *In re Cap. One Consumer Data Sec. Breach Litig*. for the proposition that "failure to secure a party's data can give rise to an unjust enrichment claim where a defendant accepts the benefits accompanying plaintiff's data and does so at the plaintiff's expense by not implementing adequate safeguards." 488 F. Supp. 3d 374, 412 (E.D. Va. Sep. 18, 2020). However, in *In re Cap. One*, the data breach was the result of a well-known vulnerability in

Defendant's Amazon Web Services cloud environment, so plaintiffs could easily demonstrate Defendant knew about the vulnerability and was able to profit without undertaking measures to adequately secure Plaintiffs' PII on its servers. *Id.* Moreover, the *In re Cap. One* court did not apply Florida law to evaluate the plaintiffs' unjust enrichment claim. *See id.* Here, under Florida law, Plaintiffs do not plausibly allege Defendant had knowledge of, or appreciated, the benefit conferred specifically to safeguard Plaintiffs' PII.

Plaintiffs also point to *In re Rutter's Inc. Data Sec. Breach Litig.* to show that, under Florida law, they need not demonstrate a separate payment to Defendant for data security services; instead, they plead that safeguarding of their PII is "[i]nherent in the nature of their transaction." 511 F. Supp. 3d 514, 539–40 (M.D. Pa. 2021). However, *In re Rutter's* is distinguishable because the court applied Pennsylvania law, not Florida law and, like in *In re Cap. One* and in *Resnick*, the plaintiffs alleged the defendant "appreciated these [monetary] benefits or at least had knowledge that Plaintiffs conferred money upon it." *Id.* at 539. Plaintiffs here did not make the same allegation.

The Court deems Defendant's Motion to Dismiss as to Count IV (unjust enrichment) is **GRANTED.**

*vi. Whether Plaintiff, on behalf of the California subclass, plausibly alleges violation of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a)*

Because Plaintiff Chappell lacks standing, the Court lacks jurisdiction to determine whether the California subclass states a claim for Defendant's violation of the California Consumer Privacy Act.

## ***iv.*** **CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Motion to Dismiss [DE 24] is **GRANTED IN PART** as follows:

1. Count I (as to negligence *per se)* and Count III are **DISMISSED WITHOUT PREJUDICE AS WITHDRAWN**;
2. Count IV (Unjust Enrichment) is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim;
3. Count V (CCPA Violation) is **DISMISSED WITHOUT PREJUDICE** for lack of Article III standing.
4. Plaintiff is granted leave to file an amended complaint, consistent with this Order, on or before **November 2, 2026**;
5. Failure to do so will result in this case proceeding only as to Counts I and II.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 19th day of October, 2026.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record